IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| LARAINE HARRIS and ERIC MATTEA, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | 8:09CV154 |
| v. | ) ) | |
| D. SCOTT CARRUTHERS & ASSOC., REGENT ASSET MANAGEMENT SOLUTIONS, and UNITED CREDIT MANAGEMENT CORP., | ) ) ) ) | MEMORANDUM AND ORDER |
| Defendants. | ) ) | |

## I. INTRODUCTION & BACKGROUND

This matter is before the Court on the plaintiffs Laraine Harris and Eric Mattea's motion to compel responses to deposition questions (Filing No. 83). The plaintiffs filed this action pursuant to Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., and the Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59-1601 et seq.

The plaintiffs' current discovery efforts are in furtherance of certifying this case as a class action. As part of these efforts, the plaintiffs deposed D. Scott Carruthers (the individual) and Michael Scata (Regent's President). At their depositions, Carruthers and Scata refused to answer numerous questions that the plaintiffs' counsel posed to them. For many of the questions Carruthers and Scata refused to answer, the plaintiffs invoked the attorney-client privilege.

After the depositions, counsel for both parties conferred regarding the deponents' invocation of the attorney-

client privilege (*see generally* Filing No. 85-2, Exhibit 1A), but could not resolve their disagreement regarding the proper invocation of the privilege.  The plaintiffs filed the motion presently before the Court.

On February 10, 2010, the Court conducted a hearing to resolve the litany of discovery motions pending in this case.  At the hearing, the parties and the Court discussed Carruthers' invocation of the attorney-client privilege.  Counsel for the defendants acknowledged that some of Carruthers' invocations of the attorney-client privilege were improper.  The defendants' counsel, however, maintained that some of Carruthers' invocations had been proper.

Subsequent to the hearing, the defendants filed a brief opposing the plaintiffs' motion to compel, which listed the specific instances where (the defendants believed) Carruthers had properly invoked the attorney-client privilege.  The defendants listed the following questions as proper invocations by Carruthers of the attorney-client privilege:[1] 9:11-12; 14:1-2; 22:11-13; 22:20-21; 29:23-24; 30:1-2; 30:4-5; 36:6-7; 46:4-5; 47:12-13; 47:18-19; 51:5-7; 51:12-15; 59:15-17; 59:21-22; 60:20-22; 61:6-8; 61:23; and 64:9-19.  The defendants brief did not address whether Scata had properly invoked the attorney-client privilege.  After reviewing the briefs and the applicable law, the Court will grant the plaintiffs' motion in part.  For the

---

[1] Citations to deposition testimony are listed as [Deposition Page Number]:[Line Number].

following reasons, Carruthers and Scata must answer those deposition questions for which they improperly invoked the attorney-client privilege.

## II.   DISCUSSION

### A.   Attorney-Client Privilege

Federal Rule of Evidence 501 instructs that the law of privileges "shall be governed by the principles of common law as they may be interpreted by the courts of the United States in the light of reason and experience."  *Id.*  In non-diversity cases, courts do not look to any state-specific law regarding privileges, but rather apply the "federal common law."  *In re Bieter Co.*, 16 F.3d 929, 935 (8th Cir. 1994).

The attorney-client privilege is one of the oldest known privileges to the common law, which federal courts have consistently recognized under Rule 501.  *In re Grand Jury Subpoena Duces Tecum* (*GJSDT*), 112 F.3d 910, 915 (8th Cir. 1997). Although not adopted by Congress, both the Eighth Circuit and other courts of appeals have recognized the Supreme Court's Proposed Rule 503 ("P.R. 503") as a "useful starting place" for examining the common-law attorney-client privilege.  *GJSDT*, 112 F.3d at 915 (citing P.R. 503, *reprinted in* 56 F.R.D. 183, 235 (1972)); *see*, *e.g.*, *United States v. BDO Seidman, LLP* (*BDO Seidman II*), 492 F.3d 806, 815 (7th Cir. 2007) (recognizing P.R. 503 as "a source of general guidance").  P.R. 503 provided:

> A client has a privilege to refuse
> to disclose and to prevent any
> other person from disclosing
> confidential communications made

>            for the purpose of facilitating the
>            rendition of professional legal
>            services to the client, (1) between
>            himself or his representative and
>            his lawyer or his lawyer's
>            representative, or (2) between his
>            lawyer and the lawyer's
>            representative, or (3) by him or
>            his lawyer to a lawyer representing
>            another in a matter of common
>            interest, or (4) between
>            representatives of the client or
>            between the client and a
>            representative of the client, or
>            (5) between lawyers representing
>            the client.

P.R. 503, 56 F.R.D. 183, 236 (1972).  Put another way, the attorney-client privilege attaches when the communication in question is made: "(1) in confidence; (2) in connection with the provision of legal services; (3) to an attorney; and (4) in the context of an attorney-client relationship."  *BDO Seidman II*, 492 F.3d at 815.  Other common-law statements of the attorney-client privilege agree with this characterization.  *See* Restatement (Third) of the Law Governing Lawyers § 68 (2000) ("[T]he attorney-client privilege may be invoked . . . with respect to: (1) a communication; (2) made between privileged persons; (3) in confidence; (4) for the purpose of obtaining or providing legal assistance for the client.").

      Although providing broad protection, the attorney-client privilege has limitations.  The attorney-client privilege does not protect communications between a client and an attorney that relate only to business or technical data.  *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 403 (8th Cir. 1987).  "Legal departments are not citadels in which public, business or

technical information may be placed to defeat discovery and thereby ensure confidentiality." *Simon*, 816 F.3d at 403 (quoting *SCM Corp. v. Xerox Corp.*, 70 F.R.D. 508, 515 (D. Conn. 1976)). Communications between a business and its attorney do not automatically receive protection under the attorney-client privilege. *See id.*

Courts have articulated the following principles to inform analysis of the attorney-client privilege's applicability:

> (1) Courts construe the privilege to apply only where necessary to achieve its purpose. [*United States v. BDO Seidman* (*BDO Seidman I*), 337 F.3d 802, 811 (7th Cir. 2003)].
>
> (2) Only those communications which reflect the lawyer's thinking or are made for the purpose of eliciting the lawyer's professional advice or other legal assistance fall within the privilege. [*United States v. Frederick*, 182 F.3d 496, 500 (7th Cir. 1999)].
>
> (3) Because one of the objectives of the privilege is assisting clients in conforming their conduct to the law, litigation need not be pending for the communication to be made in connection to the provision of legal services. *United States v. Schwimmer*, 892 F.2d 237, 243-44 (2d Cir.1989).
>
> (4) Because the privilege is in derogation of the search for truth, any exceptions to the requirements of the attorney-client privilege must be strictly confined. *In re Grand Jury Proceedings* (*Thullen*), 220 F.3d 568, 571 (7th Cir.2000).

*BDO Seidman II*, 492 F.3d at 815.

-5-

**B.     Carruthers**

With the rules set forth above in mind, the Court finds Carruthers impermissibly invoked the attorney-client privilege in connection with the following questions: 9:11-12; 14:1-2; 22:11-13; 22:20-21; 59:15-17; 59:21-22; 60:20-22; 61:6-8; 61:23; and 64:9-19.[2]  All of these questions inquired into matters that related only to business information and this information is not protected by the attorney-client privilege.  Carruthers may not invoke the privilege to avoid answering these questions.

However, the Court finds some of Carruthers' other invocations of the attorney-client privilege were proper as they involved confidential communications between an attorney and a client in connection with the provision of legal services.  Specifically, the Court finds the following deposition questions delved into confidential matters for which Carruthers could permissibly invoke the attorney-client privilege: 29:23-24; 30:1-2; 30:4-5; 36:6-7; 46:4-5; 47:12-13; 47:18-19; 51:5-7; and 51:12-15.  These are the only questions from Carruthers' prior deposition for which he may permissibly invoke the attorney-client privilege.

In light of the fact that Carruthers invoked the attorney-client privilege approximately seventy-five times during his deposition, but only nine of these invocations were proper,

---

[2] Carruthers also impermissibly invoked the attorney-client privilege with regard to other questions posed to him at his deposition, but the defendants conceded at the February 10th hearing and in their brief that these invocations were impermissible.

the Court will order Carruthers to sit for an additional oral deposition. This additional deposition will occur in Omaha, Nebraska, at a place determined by the plaintiffs. Carruthers shall bear the cost of travel to this additional deposition.

**C.    Scata**

Regarding Scata, the Court finds Scata impermissibly invoked the attorney-client privilege on two occasions during his deposition: 67:17-18 and 101:6-8. In both these instances, the plaintiffs sought information relating only to business information, and Scata could not properly invoke the attorney-client privilege as a response to these questions. Therefore, the Court will order Scata to answer these deposition questions.

Since Scata improperly invoked the attorney-client privilege on only two occasions during his deposition, the Court will not order Scata to travel to Omaha to sit for an additional deposition. However, the plaintiffs may solicit responses from Scata to the two questions either through deposition by written questions, pursuant to Fed. R. Civ. P. 31, through deposition by oral examination by remote means, pursuant to Fed. R. Civ. P. 30(b)(4), or through an additional face-to-face oral deposition. Accordingly,

IT IS ORDERED that plaintiffs' motion to compel is granted in part and denied in part:

> 1) Carruthers will travel to Omaha, Nebraska, to sit for an additional deposition by oral examination;

      a)  Carruthers will bear the cost of his travel to Omaha for this deposition;

      b)  In conformance with this memorandum and order, Carruthers will answer all questions for which he impermissibly invoked the attorney-client privilege during his initial deposition.

2)  In conformance with this memorandum and order, Scata will answer the two questions for which he impermissible invoked the attorney-client privilege during his initial deposition; and

3)  The motion is denied in all other respects.

DATED this 18th day of February, 2010.

               BY THE COURT:

               /s/ Lyle E. Strom
               _____
               LYLE E. STROM, Senior Judge
               United States District Court