IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

LARAINE HARRIS and ERIC MATTEA,   )
on behalf of themselves and all   )
others similarly situated,        )
                                  )
              Plaintiffs,          )          8:09CV154
                                  )
        v.                         )
                                  )
D. SCOTT CARRUTHERS & ASSOC.,      )       MEMORANDUM OPINION
REGENT ASSET MANAGEMENT SOLUTIONS, )
and UNITED CREDIT MANAGEMENT CORP.,)
                                  )
              Defendants.          )
_____)

## I.  INTRODUCTION

This matter is before the Court on plaintiffs Laraine Harris ("Harris") and Eric Mattea's ("Mattea") (collectively, the "named plaintiffs") motion for class certification (Filing No. 108).  The Court conducted a hearing on the motion on June 25, 2010.  The parties have filed several briefs (Filing Nos. 108, 115, 118, 123, and 124) and indexes of evidence (Filing Nos. 109, 116, and 119) supporting their positions.  Plaintiffs argue they have fulfilled all of the requirements of Fed. R. Civ. P. 23 for obtaining class certification.  Defendants D. Scott Carruthers & Associates ("Carruthers") and Regent Asset Management Solutions ("Regent") (collectively, "defendants") maintain plaintiffs have failed to demonstrate any of Rule 23's requirements have been met.  After reviewing the briefs, evidentiary submissions, and arguments of the parties, the Court finds plaintiffs have fulfilled Rule 23's requirements and will grant plaintiffs' motion for class certification.

## II.   BACKGROUND

Harris has alleged defendants sent her a series of letters between November 12, 2008, and May 21, 2009, attempting to collect on a debt Harris allegedly owed to U.S. Bank (Amended Complaint ("AC"), Filing 13, ¶¶ 12-18; AC, Exhibits A, B, & C). Similarly, Mattea has alleged defendants sent him a letter dated April 7, 2009, attempting to collect on a debt Mattea allegedly owed to U.S. Bank (AC, ¶¶ 19-20; AC, Exhibit D).  Both maintain these alleged debts to U.S. Bank are illegitimate.

Plaintiffs filed this action on April 29, 2009, alleging defendants' letters violate the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. § 1692 et seq., and the Nebraska Consumer Protection Act (the "NCPA"), Neb. Rev. Stat. § 59-1601 et seq. (Complaint, Filing No. 1).  Specifically, plaintiffs maintain the letters violate 15 U.S.C. § 1692e (false or misleading representations), § 1692f (unfair practices), § 1692g (improper validation of debts and notice), and Neb. Rev. Stat. § 59-1602 (deceptive act or practice) (AC ¶¶ 40, 41). Plaintiffs seek relief under these provisions of law in the form of statutory and actual damages, declaratory relief, and costs and attorney's fees (*Id.*; *see* 15 U.S.C. § 1692k; Neb. Rev. Stat. § 59-1609).

Plaintiffs seek to have two classes certified.  The first class, known as the "FDCPA Class," would be defined as (I) all persons with addresses in Nebraska, (ii) to whom defendants sent, or caused to be sent, any letter in the form of the letters

-2-

attached to the Amended Complaint (Exhibits A, B, C, and/or D), (iii) in an attempt to collect an alleged debt, (iv) which, as shown by the nature of the alleged debt, defendants' records, or the records of the original creditors, was primarily for personal, family, or household purposes, (v) during the period *one year* prior to the date of filing this action (*See* AC ¶ 29). The second class, known as the "NCPA Class," would be defined as (I) all persons with addresses in Nebraska, (ii) to whom defendants sent, or caused to be sent, any letter in the form of the letters attached to the Amended Complaint (Exhibits A, B, C, and/or D), (iii) in an attempt to collect an alleged debt, (iv) which, as shown by the nature of the alleged debt, defendants' records, or the records of the original creditors, was primarily for personal, family, or household purposes, (v) during the period *four years* prior to the date of filing this action (AC ¶ 30).

### III.  ANALYSIS

In order to certify a class, plaintiffs have the burden of demonstrating the requirements of Fed. R. Civ. P. 23 have been met. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Under Rule 23, plaintiffs must fulfill the four prerequisites of Rule 23(a): numerosity; commonality; typicality; and adequate representation. *Amchem*, 521 U.S. at 613. Then, plaintiffs must demonstrate the putative class falls into one of the three types of class actions under Rule 23(b). *Id.* at 614.

-3-

## A.    Rule 23(a) Prerequisites

1.    Numerosity

Under Rule 23(a)(1), "the class must be so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  In showing numerosity, plaintiffs need not demonstrate that joinder is impossible, but rather that joining all class members would be difficult. *Evans v. Am. Credit Sys., Inc.*, 222 F.R.D. 388, 393 (D. Neb. 2004).  There is no magic number for proving numerosity, but courts have stated as few as forty class members is sufficient to show joinder is impracticable. *Hale v. AFNI, Inc.*, 264 F.R.D. 402, 404 (N.D. Ill. 2009).  Although numerosity cannot be based on mere allegations, a party seeking class certification "need not show the precise number of members in the class." *Morales v. Greater Omaha Packing Co., Inc.*, 266 F.R.D. 294, 300 (D. Neb. 2010).

From discovery, defendants disclosed that approximately eighty-nine Nebraskans were eligible to be sent a dunning letter in the time-frames contemplated by the class definitions.  The Court finds this number of potential class members sufficient to fulfill the numerosity requirement of Rule 23(a) for both the FDCPA and the NCPA classes.

Defendants' arguments to the contrary are not persuasive.  Defendants argue plaintiffs have failed to adduce any proof that any Nebraskans other than the named plaintiffs received letters from defendants.  This argument fails because the inquiry in this case is whether the defendants *sent* letters

-4-

to other Nebraskans that were similar to the letters sent to Harris and Mattea.  When a plaintiff alleges a violation of 15 U.S.C. § 1692g(a), such as in this case, an FDCPA violation occurs when the defendant *sends* a letter not conforming to § 1692g(a)'s requirements; whether the addressee *receives* the letter is irrelevant.  *See Mahon v. Credit Bureau of Placer County, Inc.*, 171 F.3d 1197, 1201 (9th Cir. 1999); *Savino v. Computer Credit, Inc.*, 960 F. Supp. 599, 605 (E.D.N.Y. 1997); *Newman v. CheckRite Cal., Inc.*, No. Civ. S-93-1557, 1996 WL 1118092, at *5 (E.D. Cal. 1996); *Kuhn v. Account Control Tech.*, 865 F. Supp. 1443 (D. Nev. 1994).

Defendants also argue numerosity cannot be proven because defendants did not maintain records regarding which individual debtors in their database were sent or received letters from defendants.  In response, plaintiffs point to case law stating a debt collector should not be able to avoid class certification by failing to adequately keep records.  *Macarz v. Transworld Sys., Inc.*, 193 F.R.D. 46 (D. Conn. 2000).  In *Macarz*, the defendant debt collector argued class certification was improper because the defendants, who collected both consumer and commercial debt, failed to maintain records regarding which debtors owed consumer debt and which debtors owed commercial

debt.[1]  *Macarz*, 193 F.R.D. at 57.  The Court in *Macarz*, however, rejected this argument by the defendants, stating:

> Should a debt collection company as large and as sophisticated as Transworld be able to avoid class action liability by mere fact of inadequate record-keeping, the Congressional purpose behind the statute would indeed be thwarted . . . .  In addition, any disputes regarding whether a particular class member's debt is consumer or commercial can be remedied through proper drafting of the claim form, and at the damages phase of this case.  Defendant's objection to class certification on grounds that the class cannot be readily identified is overruled.

*Id.*  Similar to the defendants in *Macarz,* who attempted to avoid class certification through inadequate record keeping as to which debtors owed consumer or commercial debt, defendants in this case attempt to defeat class certification through their failure to retain information regarding which Nebraskans were sent letters similar to the letters sent to the named plaintiffs.  Accordingly, like the Court in *Macarz*, this Court will not allow defendants to prevail by virtue of their careless record retention.  Plaintiffs have sufficiently demonstrated numerosity for the FDCPA class and the NCPA class.

---

[1] This distinction was important because the FDCPA only pertains to debt collection practices attempting to collect consumer debt.  *See* 15 U.S.C. § 1692a(5) ("The term 'debt' means any obligation . . . which . . . are primarily for personal, family, or household purposes. . . .").

-6-

2.   Commonality

The second prerequisite under Rule 23(a) is "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Commonality does not require every question of law or fact to be the same among every potential class member.  *DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995). Rather, commonality can be shown "where the question of law [or fact] linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated."  *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 561 (8th Cir. 1982).  Commonality is characterized as a "very light burden" that the plaintiff can typically "easily satisfy." *Evans*, 222 F.R.D. at 393.  In the context of an FDCPA class-action case, some courts have stated commonality is established when the plaintiff alleges that all class members received the same collection notice.  *See*, *e.g.*, *Swanson v. Mid Am, Inc.*, 186 F.R.D. 665, 668 (M.D. Fla. 1999) (citing *Savino v. Computer Credit*, 173 F.R.D. 346, 352 (E.D.N.Y. 1997)); *see also*, *Macarz*, 193 F.R.D. at 49 (stating a class "logically involv[ed] common questions," when the class consisted of all residents of a state, who were sent a debt collection letter identical in form to the letter sent to the class representative).  The Court finds a common question of law exists in this case:  whether the debt collection letters defendants sent to the class violate the FDCPA and the NCPA.  Thus, plaintiffs have satisfied the commonality requirement of Rule 23(a) for both classes.

-7-

Defendants chief argument against commonality is that there are inevitable factual and legal distinctions among the class members that would require the Court to conduct a "series of mini-trials" for each class member.  While potentially true, defendants have merely identified an issue present in nearly every class action.  If commonality required all class members to have identical factual circumstances, then virtually no case would be capable of being certified as a class action.  As the authorities cited above demonstrate, the class members in this case need not be identically situated.  The common issue of law existing between the named plaintiffs and the class members is sufficient to satisfy commonality for the FDCPA and the NCPA classes.

3.   Typicality

The third prerequisite under Rule 23(a) is "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  The focus with typicality is whether other class members have claims similar to the named plaintiff.  *DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171 (8th Cir. 1995).  The burden of proving typicality is also "fairly easily met" and "factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory."  *Alpern v. Utilicorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996).

-8-

Several cases have held that a defendants' alleged sending of form letters to class members and the class representative that purport to violate the FDCPA fulfills the typicality requirement of Rule 23(a). *Hale v. AFNI, Inc.*, 264 F.R.D. 402, 405 (N.D. Ill. 2009); *Jancik v. Cavalry Portfolio Servs., LLC*, Civil No. 06-3104, 2007 WL 1994026, at *6 (D. Minn. July 3, 2007); *Evans*, 222 F.R.D. at 394; *Macarz*, 193 F.R.D. at 51. In this case, plaintiffs have made such an allegation. Accordingly, the Court finds the named plaintiffs' claims are typical of both the FDCPA and the NCPA classes.

Defendants again raise issues regarding potential factual and legal distinctions that will need to be made between the named plaintiffs and the class members. As was the case with commonality, these distinctions are not sufficient to defeat a finding of typicality.

4. Adequate Representation

The fourth and final prerequisite under Rule 23(a) is "the representative parties will fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(4). The focus of adequate representation is whether: "(1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Evans*, 222 F.R.D. at 395. Based on the named plaintiffs' affidavits (Filing Nos. 109-1 & 109-2) and their testimony during the class certification hearing, the Court finds the named

-9-

plaintiffs have demonstrated they will adequately represent the classes in this case.

**B.    Rule 23(b) Types**

In addition to satisfying all of the prerequisites under Rule 23(a), the party seeking class certification must also demonstrate the action is maintainable under one of the types of class actions found in Rule 23(b).  *Amchem*, 521 U.S. at 614.  In this case, plaintiffs seek class certification under Rule 23(b)(2) (injunctive relief), or under Rule 23(b)(3) (predominate question of law or fact and superior method of adjudication), or a hybrid of the two.

1.    Rule 23(b)(2) - Injunctive Relief

Under Rule 23(b)(2), a class action may be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  For classes certified under paragraph (b)(2), direct notice to the class members is not required.  Fed. R. Civ. P. 23(c)(2)(A).  Certification under Rule 23(b)(2) is appropriate "only when the primary relief sought is declaratory or injunctive."  *In re St. Jude Med., Inc.*, 425 F.3d 1116, 1121 (8th Cir. 2005).

The Court finds certification under Rule 23(b)(2) is improper for either class.  First, with regard to the FDCPA class, certification pursuant to Rule 23(b)(2) is inappropriate

-10-

because the FDCPA "contains no provision for injunctive and declaratory relief for private litigants." *Watkins v. Am. Mortgage Assocs., Inc.*, No. 4:09CV835, 2010 WL 1417973, at *3 (E.D. Ark. March 31, 2010); *see Weiss v. Regal Collections*, 385 F.3d 337, 342 (3d Cir. 2004); *Crawford v. Equifax Payment Servs., Inc.*, 201 F.3d 877, 882 (7th Cir. 2000); *Sibley v. Fulton DeKalb Collection Serv.*, 677 F.2d 830, 834 (11th Cir. 1982). *But cf. Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 977 n.39 (5th Cir. 2000) (assuming, but not deciding, equitable relief was available under the FDCPA when the defendant did not challenge this assumption on appeal, but acknowledging "courts uniformly hold that the FDCPA does not authorize equitable relief"). In light of these cases, neither equitable nor injunctive relief is available to the FDCPA class, thus making certification under Rule 23(b)(2) improper for this class.

For the NCPA class, the Court similarly finds certification under Rule 23(b)(2) to be inappropriate. Unlike the FDCPA, the NCPA specifically authorizes equitable relief. *See* Neb. Rev. Stat. § 59-1609; *Hage v. Gen. Serv. Bureau*, No. 8:01-CV-367, 2002 WL 1796575, at *2 (D. Neb. Aug. 5, 2002). However, certification under Rule 23(b)(2) for the NCPA class is improper because plaintiffs in this case primarily seek individual remedies for the NCPA class members, as opposed to a group remedy. *See St. Jude*, 425 F.3d at 1121 ("Injuries remedied through (b)(2) actions are really group, as opposed to individual injuries." (internal quotation omitted)). While equitable relief

-11-

constitutes a part of the remedy plaintiffs seek under the NCPA, the Court finds equitable relief is not the primary relief sought for the NCPA class. *See id.* (stating certification under Rule 23(b)(2) is appropriate only when the primary relief sought is injunctive or declaratory relief). In addition to equitable relief, plaintiffs also seek under the NCPA actual and statutory damages, attorney's fees, and costs. Therefore, the Court finds equitable relief is not the primary relief plaintiffs seek on behalf of the NCPA class. The Court will not certify the NCPA class under Rule 23(b)(2).

   2.   Rule 23(b)(3) - Predominate Question and Superior Form of Action

Rule 23(b)(3) provides for class certification if "the court finds that the questions of law or fact common to class members predominate over any question affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The focus of Rule 23(b)(3) is predominance and superiority. The rule also includes a non-exclusive list of factors pertinent to a court's "close look" at the predominance and superiority criteria:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

-12-

                    (C) the desirability or
                    undesirability of concentrating the
                    litigation of the claims in the
                    particular forum; and

                    (D) the likely difficulties in
                    managing a class action.

*Id.*; *Amchem*, 521 U.S. at 615-16.

          a.   Predominance

          The chief inquiry for predominance is whether the

proposed class is sufficiently cohesive to warrant adjudication

by representation.  *Evans*, 222 F.R.D. 395 (quoting *Amchem*, 521

U.S. at 623).  "In order to 'predominate,' common issues must

constitute a significant part of the individual cases."  *Id.*

(quoting *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th

Cir. 1986).  "[W]hen one or more of the central issues in the

action are common to the class and can be said to predominate,

the action will be considered proper under Rule 23(b)(3) even

though other important matters will have to be tried separately."

*Id.*

          Defendants make a passing challenge on the predominance

issue, referencing their previous argument that since commonality

under Rule 23(a)(2) cannot be shown, predominance cannot be

shown.  As the Court held in *Evans*, where "an essential link

among all putative class members [is] the receipt of certain

letters which violate the FDCPA" predominance is satisfied.  *Id.*;

*see also Hale*, 402 F.R.D. at 407 ("Rule 23(b)(3)'s predominance

requirement is typically satisfied where the central, common

issue is whether the defendant's form letter violates the

                              -13-

FDCPA.").  In this case, plaintiffs have alleged defendants sent certain letters in violation of the FDCPA and the NCPA.  Thus, similar to *Evans*, the Court finds the common issues of whether each letter sent to the classes violate the FDCPA and/or the NCPA predominate over the individual claims for monetary relief.

      b.  Superiority

      The second prong of the Rule 23(b)(3) type of class action requires the class action to be "superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  Implicit in this test is "the notion that the adjudication of common issues will help achieve judicial economy."  *Evans*, 222 F.R.D. at 396.  The Supreme Court has stated that the policy consideration behind Rule 23(b)(3) is "to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."  *Amchem*, 521 U.S. at 617 (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)).  At least one court of appeals has indicated class actions under the FDCPA are superior to individual litigation.  *See Crawford v. Equifax Payment Servs., Inc.*, 201 F.3d 877, 880 (7th Cir. 2000) ("Because [FDCPA] cases are small-stakes cases, a class suit is the best, and perhaps only, way to proceed.").

      Defendants first contend a class action would not be superior because the case will be difficult to manage, as "the lack of any documentation to support who received the same letters as [the named plaintiffs] presents a significant barrier"

-14-

(Defendant's Opposition Brief, Filing No. 115, at 20).  As was
the case for the numerosity prerequisite, see *supra*, the Court
will not allow defendants' careless records retention serve as a
barrier to class certification.  In addition, the Court is
confident that a properly drafted class notification sent to the
eighty-nine potential class members (and any others the parties
have identified) will help mitigate this concern.  Upon receiving
the notice, many of the potential class members may recognize
that defendants sent them similar or identical letters as were
sent to the named plaintiffs.  Some may even have retained the
letters defendants sent them.  Thus, the defendants' lack of
records regarding which individuals were sent letters similar to
the named plaintiffs does not make a class action inferior to
other methods of adjudication.

   Defendants' chief argument against superiority is that
class members will receive virtually no relief, because the FDCPA
caps damages in class actions at the lesser of $500,000 or one
percent of the defendants' net worth, 15 U.S.C.
§ 1692k(a)(2)(B)(ii), and because defendants have a negative net
worth.  Thus, defendants argue, class members will receive no
statutory damages under the FDCPA.  Defendants have the burden of
demonstrating their negative net worth.  *See Mund v. EMCC, Inc.*,
259 F.R.D. 180, 186, 187 (D. Minn. 2009) (certifying a class when
the defendant had not provided persuasive evidence of their
negative net worth and the plaintiff had otherwise fulfilled the
requirements of Rule 23).

In support of this argument, defendants cite *Sonmore v. Checkrite Recovery Services, Inc.*, 206 F.R.D. 257 (D. Minn. 2001). In *Sonmore*, the court denied class certification under Rule 23(b)(3) for an FDCPA violation because the class members would be entitled to recover no more than $25 per member,[2] and the total amount of recovery may have been as low as $0.15 per class member. *Sonmore*, 206 F.R.D. at 265. The court in *Sonmore* ultimately determined allowing such a de minimus amount of recovery per class member warranted a finding that a class action was not superior, thus making class certification improper. *Id.* Defendants argue this case is similar to the circumstance in *Sonmore* because they have demonstrated they have a negative net worth, which would mean the class plaintiffs would be entitled to no recovery under the FDCPA.

Defendants' negative net worth argument first fails because the evidence defendants presented demonstrating their negative net worth was unpersuasive. At the class certification hearing, defendants presented several financial documents purporting to show their negative net worth. In support of the documents demonstrating Carruthers' negative net worth, defendants offered testimony from Dennis Scott Carruthers, the individual. Mr. Carruthers testified that he had prepared the financial documents demonstrating his law firm's negative net

---

[2] The putative class in *Sonmore* was composed of 20,000 people. Due to the FDCPA's class action damages ceiling of $500,000, the *most* any individual class plaintiff could recover was $25 ($500,000 / 20,000 members = $25 per member).

-16-

worth.  However, during direct examination, Mr. Carruthers had
difficulty explaining the meaning of some of the entries on the
financial documents.  For example, when asked what the entry for
"Current Annual Portion of Long Term Debt" referenced, Mr.
Carruthers candidly stated he did not know.  Mr. Carruthers also
stated there were some financial transactions his law firm had
entered into that were not contained in the financial documents
provided to the Court.  Further casting doubt on his testimony
and the veracity of the financial documents he prepared, Mr.
Carruthers had a large incentive to demonstrate to the Court that
his law firm has a negative net worth.  Cumulatively, these
circumstances do not persuade the Court that Carruthers has a
negative net worth.  Similarly, the Court finds the financial
documents defendants provided for Regent unpersuasive.  In
support of Regent's financial documents, defendants offered
testimony from Michael Scata, Regent's President, CEO, and sole
shareholder.  Doubt as to the accuracy of Regent's financial
documents arises from Mr. Scata's large incentive to testify that
Regent has a negative net worth and from the fact Mr. Scata had
little personal involvement in the preparation of Regent's
financial documents.  Accordingly, the Court finds defendants
have not demonstrated they have a negative net worth.  *See Mund*,
259 F.R.D. at 186, 187 (refusing to deny class certification in
an FDCPA case when there were "substantial questions" regarding
the defendant's true net worth and when the defendant's CEO "had

-17-

'no idea'" about the status of a related entity disclosed on the defendant's balance sheet).

Second, even if defendants provided audited-objective financial documents demonstrating their negative net worth, this still would not be sufficient to defeat a finding that a class action is superior. The Court's review of the law demonstrates the decision in *Sonmore* not to certify a class because of a potentially de minimus recovery for class members under the FDCPA goes against the majority of cases that have determined certification is appropriate, or at least is not prohibited, when class members may receive a de minimus recovery under the FDCPA. For instance, subsequent to *Sonmore* in the District of Minnesota, where *Sonmore* was decided, several other courts have been reticent to apply *Sonmore* to other FDCPA cases where class members would have received de minimus recoveries. *Mund*, 259 F.R.D. at 187; *Jancik v. Cavalry Portfolio Servs., LLC*, Civil No. 06-3104, 2007 WL 1994026, at *10, *11 (D. Minn. July 3, 2007) ("Defendants should not be allowed to avoid paying damages simply because each individual plaintiff will receive only a small recovery [if a class action is certified]."); *Liles v. Am. Corrective Counseling Servs., Inc.*, 231 F.R.D. 565, 576 (D. Minn. 2005) (refusing to follow *Sonmore* when the defendants had provided evidence that the class members could receive as little as $0.74 in statutory damages under the FDCPA). Other courts have similarly determined a de minimus recovery for class members should not inhibit class certification. *See*, *e.g.*, *Lemire v.*

-18-

*Wolpoff & Abramson, LLP*, 256 F.R.D. 321, 331 (D. Conn. 2009)
(determining a class action was still superior even though
defendant had presented evidence of its negative net worth);
*Macarz*, 193 F.R.D. at 55 ("[T]he notion that individual
plaintiffs may recover higher damages if they were to pursue
their own claims is implicit in the very idea of a class action,
and is part of the balance that is struck in Rule 23 of providing
a vehicle for the aggregation of small claims while still seeking
to protect those individual claimants."); *Weber v. Goodman*, 9 F.
Supp. 2d 163, 170, 171 (E.D.N.Y. 1998) (deciding a class action
in an FDCPA case was superior even though class members would
receive no more than $2 in statutory damages for the defendant's
FDCPA violation).

    Many of these cases cite the Seventh Circuit's opinion
in *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir.
1997).  In *Mace*, an FDCPA case in which the plaintiff sought
class certification, the court commented with disfavor upon a
finding by the district court that a class action was not a
superior method of adjudication when class members would likely
recover only $0.28 in statutory damages under the FDCPA.  *Mace*,
109 F.3d at 344, 345.  The court in *Mace* stated:

> The policy at the very core of the
> class action mechanism is to
> overcome the problem that small
> recoveries do not provide the
> incentive for any individual to
> bring a solo action prosecuting his
> or her rights.  A class action
> solves this problem by aggregating
> the relatively paltry potential
> recoveries into something worth

-19-

> someone's (usually an attorney's)
> labor.
>
> True, the FDCPA allows for
> individual recoveries of up to
> $1000.  But this assumes that the
> plaintiff will be aware of her
> rights, willing to subject herself
> to all the burdens of suing and
> able to find an attorney willing to
> take her case.  These are
> considerations that cannot be
> dismissed lightly in assessing
> whether a class action or a series
> of individual lawsuits would be
> more appropriate for pursuing the
> FDCPA's objectives.

*Id.*

In this case, even if the FDCPA class members receive a de minimus amount of statutory damages (or none at all) under the FDCPA, these class members will still be able to recover actual damages, attorney's fees, and costs under the FDCPA.  Further, given the class definitions, the FDCPA class members will also be members of the NCPA class and potentially will be able to recover damages and equitable relief under the NCPA.  Even though FDCPA class members may not recover as much in FDCPA statutory damages as they could potentially recovery from bringing individual claims, the FDCPA class members would still enjoy the recovery benefits of being apart of a class action without incurring the substantial costs of filing individual suits.  Further, in the event individual class members have a concern about their relative recovery from a class action as opposed to individual litigation, they will have an opportunity to opt out of the class upon receipt of the class action notice.  Fed. R. Civ. P.

23(c)(2)(B).  The threat of a de minimus recovery for the FDCPA class members is insufficient to defeat a finding of superiority.

Accordingly, the Court finds plaintiffs have fulfilled their burden of establishing that a class action would be a superior method for fair and efficient adjudication of this matter for both the FDCPA class and the NCPA class. Certification under Rule 23(b)(3) is appropriate for both the FDCPA and the NCPA classes.  A separate order will be entered in accordance with this memorandum opinion.

DATED this 13th day of July, 2010.

BY THE COURT:

/s/ Lyle E. Strom

_____
LYLE E. STROM, Senior Judge
United States District Court